## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 1:21-CR-41 (CJN)** |
| | : | |
| **CINDY FITCHETT,** | : | |
| | : | |
| *Defendant.* | : | |

## <u>GOVERNMENT'S SENTENCING MEMORANDUM</u>

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence defendant Cindy Fitchett to two months of home detention as part of a probationary term of three years, 60 hours of community service, and $500 in restitution.

### I.    <u>Introduction</u>

Fitchett participated in the January 6, 2021, attack on the United States Capitol – a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured over 100 law-enforcement officers, and resulted in over $1.4 million worth of property damage.

Fitchett stands before this Court to be sentenced on a misdemeanor conviction, but her conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm law enforcement, breach the Capitol, and disrupt the proceedings. But for her actions alongside so many others, the riot likely would have failed.

The government is requesting a two-month term of home detention and probation based on an assessment of the relevant sentencing factors.  Fitchett recorded a video before she entered the Capitol in which she exclaimed, "We are storming the Capitol.  We have broken in.  Patriots arise. Woo!"   She entered and remained inside until she was arrested, despite glaring evidence of a violent riot all around her, including individuals hurling chairs at police officers.  At the same time, she consented to a voluntary interview with the Federal Bureau of Investigation ("FBI") and to a search of her cellphone after her arrest on federal charges.

## II.   **Factual and Procedural Background**

### *The January 6, 2021, Attack on the Capitol*

To avoid exposition, the government refers to the general summary of the attack on the Capitol in ECF No. 82, at 1-3.  As this Court knows, a riot cannot occur without rioters, and each rioter's actions—from the most mundane to the most violent—contributed, directly and indirectly, to the violence and destruction of that day.

### *Fitchett's Role in the January 6, 2021, Attack on the Capitol*

Fitchett traveled with her friend Douglas Sweet from Virginia to attend the rally President Donald Trump planned to hold in Washington, D.C., on January 6, 2021.  After arriving in Washington, she and Sweet made their way to the Capitol.  Fitchett later told the FBI that during their walk to the Capitol, Sweet—whom she believed had an "agenda"—expressed a desire to "talk to someone" at the Capitol about the election getting stolen, though she did not know who that "someone" was.

On January 6, 2021, at approximately 2:25 p.m., Fitchett recorded a video of herself, wearing a bright orange windbreaker and red knit hat with "TRUMP" stitched on it, and Sweet, wearing a black brimmed hat and bright yellow shirt, approaching an entrance into the Capitol

with a large, raucous crowd around them yelling and making banging noises.  Fitchett, with the camera turned on herself, stated in a raised voice, "We are storming the Capitol.  We have broken in.  Patriots arise.  Woo!"  Screenshots from this video are depicted, below:



Shortly after then, Fitchett and Sweet unlawfully entered the Capitol.

Around the time Fitchett entered the Capitol, U.S. Capitol Police ("USCP") officers had already been under attack by rioters outside the building and fell back to a makeshift recovery area they had established in the Capitol Crypt.  Before long, rioters also breached that recovery area, and began throwing objects and unknown liquid substances at the officers.  The officers retreated down a stairwell to the Capitol Visitor Center ("CVC"), which is also part of the Capitol.  Some rioters threw chairs at the officers.  At approximately 2:30 p.m., surveillance video captured officers retreating down the stairwell as chairs tumbled behind them.  The officers then drew back to the end of a corridor in the CVC that led to an atrium on the House of Representatives side of the building.

Video surveillance shows at approximately 2:31 p.m., Fitchett and Sweet walked down the stairwell where the officers had retreated.  As they descended the stairwell (circled in red), an individual in military fatigues waving a baseball bat at the base of the stairwell (circled in green) appeared to exhort individuals to proceed downstairs, and chairs lay strewn about the CVC's floor (circled in yellow), as depicted in these sequential screenshots:







At approximately 2:33 p.m., surveillance video captured Fitchett and Sweet walking toward the end of the corridor where USCP officers had formed a defensive line, as depicted below:



At all times in the surveillance video, Fitchett followed Sweet inside the CVC.

Other rioters also gathered in the CVC corridor.  The officers issued commands for the rioters to leave the building.  At approximately 2:39 p.m., when rioters refused their commands, the officers began arresting individuals who had unlawfully entered the building, including Fitchett and Sweet.

The FBI uncovered no evidence that Fitchett and Sweet engaged in violent or disruptive conduct at the Capitol grounds or inside the building.

Fitchett cooperated with law enforcement following her arrest.  She gave a voluntary interview with the FBI and consented to a search of her cellphone.

During her interview, Fitchett admitted there was a "ruckus" outside the Capitol and part of the crowd there was a "mob" and "angry."  She also saw what she described as a "noose" that someone had "brought or built" when she first got to the Capitol grounds.  Fitchett claimed she got "caught up in the moment" when the former president "invited us to the Capitol."   She "got pulled into" going inside the Capitol and "didn't know how to pull back," and felt a need to follow Sweet wherever he went because that was her "survival instinct."

Fitchett admitted that inside the Capitol, she observed three young men "determined . . . to destroy as much as they could destroy," including beating rope-line poles against walls. She thought that was wrong, and claimed she told them to stop. She also claimed she heard the CVC was open and wanted to go there to find a police officer because she "feared for [her] life." She saw Sweet approach an officer expressing a desire to talk to someone about the election being stolen. A police officer in the CVC asked her to leave the building, and she was about to leave. But then Sweet got arrested, and when she asked an officer to let Sweet know she was leaving the building, she was also arrested.

Later in the interview, Fitchett acknowledged she "got caught up in the moment," and she "made the wrong decisions, which led to a wrong . . . outcome. . . . My actions were my own." Near the end of the interview, she said "nobody forced me" to enter the Capitol.

Fitchett submitted a letter to the Presentence Report ("PSR") writer in which she stated that January 6, 2021, was "not a day that I am proud of," and took "responsibility for my actions and participation." She regretted being "part of that crowd" that gathered at the Capitol. She acknowledged that she "should have made a better decision" and that she was "disappointed" with her participation in the breach. She also said the "impact of this process is completely foreign and humiliating to me." PSR at 8.

Fitchett knew at the time she entered the Capitol that she did not have permission to enter the building, and did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress.

### The Charges and Plea Agreement

Fitchett was initially arrested at the Capitol on January 6, 2021, and issued a summons to return to D.C. Superior Court. On January 7, 2021, Fitchett was charged by complaint with

7

violating 18 U.S.C. § 1752(a) and 40 U.S.C. § 5104(e)(2).  On January 12, 2021, she was rearrested on the federal complaint after she turned herself in to the FBI in Virginia.  On January 15, 2021, she was charged by an initial information with four misdemeanor counts.  On January 21, 2021, Fitchett was charged by an Amended Information with four counts, violations of 18 U.S.C. §§ 1752(a)(1) and (2), and 40 U.S.C. §§ 5104(e)(2)(D) and (G).  On August 10, 2021, she pleaded guilty to Count Four of the Amended Information, which charged a violation of 40 U.S.C. § 5104(e)(2)(G).  In her plea agreement, Fitchett agreed to pay $500 in restitution to the Department of the Treasury.[1]

### III.     Statutory Penalties

Fitchett now faces sentencing on a single count of 40 U.S.C. § 5104(e)(2)(G).  As noted by the plea agreement and the U.S. Probation Office, she faces up to six months of imprisonment and a fine of up to $5,000.  Fitchett must also pay restitution under the terms of her plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559(a)(7); U.S.S.G. §1B1.9.

### IV.     Sentencing Factors Under 18 U.S.C. § 3553(a)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). Some of the factors this Court must consider include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities

---

[1]  The actual payee of the restitution should be the Architect of the Capitol, as indicated in the PSR at 8.

among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6).

### A.  The Nature and Circumstances of the Offense

The attack on the Capitol on January 6, 2021, is a criminal offense unparalleled in American history.  It represented a grave threat to our democratic norms; indeed, it was one of the only times in our history when the building was literally occupied by hostile participants.  By its very nature, the attack defies comparison to other events.  So too does the conviction this defendant now faces.  Picketing, demonstrating, or parading at the Capitol as part of the riot on January 6 was not like picketing at the Capitol some other day, without other or with relatively few rioters present.

Indeed, this Court, in considering the nature and circumstances of the misdemeanors charged under 18 U.S.C. §§ 1752(a)(1) and (a)(2) and 40 U.S.C. §§ 5104(e)(2)(D) and (e)(2)(G) for another defendant arrested in the CVC, recognized:

> This isn't a case where the defendant is alleged to have simply trespassed into an empty government building or explored a restricted area in a reckless way. . . . [The defendant's] participation in storming the Capitol on January 6th is far more serious than the statutory offenses charged.  His participation demonstrates disregard for the rule of law, a democratic process, and a peaceful transition of power.

*United States v. Michael Thomas Curzio*, 21-cr-0041 (CJN), Tr. 3/9/2021 at 28 (hearing on defendant's motion to vacate pretrial-detention order) (statement of Judge Nichols).

All defendants should be sentenced based on their individual conduct.  But this Court should note that each individual person who entered the Capitol on January 6 did so under the most extreme of circumstances, and Fitchett is no exception. As individuals entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob.  Depending on the timing and location of their approach, they also may have

observed extensive fighting with law enforcement, and smelled chemical irritants in the air. Fitchett admitted there was a "ruckus" outside the building when she got there, and that at least part of the crowd was a "mob" and "angry."  She saw a "noose" someone had brought or built outside the Capitol.  Her selfie video captured the raucousness around her.  As she exclaimed, "We are storming the Capitol.  We have broken in," yelling and banging could be heard in the background.  She also admitted she "feared for [her] life," yet still decided to enter the Capitol.

Additionally, while looking at a defendant's individual conduct, we must assess such conduct on a spectrum. This Court, in determining a fair and just sentence on this spectrum, should look to a number of critical factors, including: (1) whether, when, and how the defendant entered the Capitol building; (2) whether the defendant engaged in any violence or incited violence; (3) whether the defendant engaged in any acts of destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored, law enforcement; and (9) whether the defendant otherwise exhibited evidence of remorse or contrition.  While these factors are not exhaustive or dispositive, they help to place individual defendants on a spectrum as to their fair and just punishment.

Fitchett observed the disarray and disorderly conduct of a riot inside the Capitol building. She admitted seeing three young men beat rope-line poles into a wall and knew that was wrong. She descended the stairwell to the CVC less than two minutes after USCP officers retreated down those same stairs as rioters threw chairs at them.  Video evidence shows a rioter in military fatigues, wielding and waving a baseball bat, appear to exhort other rioters to come down that stairwell.  As she and Sweet got to the bottom of the stairwell, chairs lay strewn on the CVC floor.  The

indications were clear that a riot was occurring around her, yet she did not turn back.  She remained in the CVC for approximately eight more minutes until officers began arresting rioters.  Make no mistake, neither Fitchett nor any other rioter was a mere tourist that day.

Fitchett claimed she admonished three young men who were being destructive to stop, but the undersigned counsel are unaware of corroborating evidence for that assertion.  The government does not have evidence that she attempted to destroy evidence.  To the contrary, she consented to a search of her cellphone.  She also submitted to a voluntary post-arrest interview, which is commendable.  While her selfie video—in which she boasted, "We have stormed the Capitol.  We have broken in.  Patriots arise," and then shouted, "Woo!"—belies her repeated characterizations during the interview that she innocently got "pulled into" the Capitol and merely tried not to get separated from Sweet, she eventually accepted responsibility for her actions during that interview.

### B.  The History and Characteristics of the Defendant

As set forth in the PSR, Fitchett does not have a prior criminal conviction.  PSR at 9.  She would likely have zero points if the Sentencing Guidelines did apply to her offense of conviction.  USSG § 4A1.2(c)(2).  Accordingly, she would be in Criminal History Category I.  USSG §§ 4A1.1, 5A.

The government also notes that from an early point in the case, Fitchett, through her attorney, expressed a desire to plead guilty. When recommending an appropriate sentence, the government gives significant weight to Fitchett's prompt resolution of this case.  These factors favor a more lenient sentence.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the Capitol building and grounds, and all that it involved, was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed

a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[2] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases arising out of the riot on January 6, 2021, including misdemeanor cases.  *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-00238 (TFH), Tr. 8/4/2021 at 3 (As Judge Hogan noted, "As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually – should be expected.")  Although this specific factor weighs in favor of incarceration, other factors identified in this memorandum favor a more lenient sentence in this case.

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).  The demands of general deterrence weigh in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.  Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration.  For the violence at the Capitol on January 6 was cultivated to interfere, and did interfere, with one of the most important democratic processes we have: the transfer of power.  As noted by Judge Moss during sentencing in *United States v. Paul Hodgkins*, 21-cr-00188 (RDM):

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

---

[2] FBI Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021) (hereinafter "FBI Director Wray's Statement"), available at:
 https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20Testimony.pdf.

Tr. 7/19/2021 at 69-70.  Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy.  It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70.

The gravity of these offenses demands deterrence.  This was not a protest.  *See id.* at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.").  And it is important to convey to future rioters and would-be mob participants—especially those who intend to improperly influence the democratic process—that their actions will have consequences.  There is possibly no greater factor that this Court must consider.

Fitchett knew that her entry in the Capitol was unlawful, and it was evident to her and anyone else at the Capitol that a frenzied mob had converged on the Capitol and a riot had broken out.  All the indications were there for Fitchett; she saw and heard the "ruckus," the banging, the yelling, the anger, the "noose," the destructive young men, a camouflage-clad rioter wielding a bat inside the Capitol, and the chairs strewn inside the CVC.  Yet she did not turn back and remained in the CVC until she was arrested.  There is no telling how much longer she would have remained had she not been one of the few individuals arrested inside the building.  Most troubling, she reveled in her selfie video that she and others were "storming the Capitol" and had "broken in," and apparently believed that conduct was patriotic.

At the same time, Fitchett's actions at the Capitol were limited, and she was willing to cooperate with law enforcement when she was rearrested in Virginia on January 12.  Although the need to deter what happened in general on January 6 favors incarceration, the facts of Fitchett's specific case and her subsequent actions favor a sentence of home detention.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful-entry misdemeanors, to assault on law-enforcement officers, to conspiracy to corruptly interfere with Congress. Each offender must be sentenced based on his or her individual circumstances, but with the backdrop of January 6 in mind. Moreover, each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment. The misdemeanor defendants will generally fall on the lesser end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021, were not minor crimes.   A probationary sentence should not necessarily become the default.[3]

Indeed, the government invites the Court to join Judge Lamberth's admonition that "I don't want to create the impression that probation is the automatic outcome here because it's not going to be."  *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19; *see also United States v. Valerie Ehrke*, 1:21-cr-00097 (PFF), Tr. 9/17/2021 at 13 ("Judge Lamberth said something to the effect . . . 'I don't want to create the impression that probation is the automatic outcome here, because it's not going to be.' And I agree with that. Judge Hogan said something similar.") (statement of Judge Friedman).

Here, to avoid unwarranted sentencing disparities, the Court should also consider the sentence imposed on Thomas Gallagher, another codefendant arrested in the CVC whom this

---

[3]  Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation, including in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); and *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC). The government is abiding by its prior agreement to recommend probation in these cases. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

Court sentenced on October 13, 2021, and the circumstances of Fitchett's codefendant, Sweet, who is set to be sentenced along with Fitchett.[4]

While it was unclear what time Gallagher entered the Capitol, he appeared in the CVC approximately one minute earlier than Fitchett and Sweet.  The government did not uncover evidence that Gallagher boasted about his entry into the Capitol, and there was mitigating video evidence that Gallagher admonished another rioter not to be disorderly.  On balance, the primary difference between these defendants is Fitchett's boastful statement about "storming" and "br[ea]k[ing] in" to the Capitol and more mitigating evidence in Gallagher's favor. That is why the government requested a shorter term of home detention for Gallagher.  The Court ultimately sentenced Gallagher to two years of probation without home detention, plus additional conditions.

Comparing the circumstances of Fitchett's conduct to Sweet's, the primary difference between the two codefendants is that there is evidence Sweet had a political agenda in traveling to Washington and ultimately breaching the Capitol on January 6.  Fitchett, on the other hand, appears to have tagged along for the ride, and the video evidence showed she followed Sweet inside the CVC.  And while Sweet has accepted responsibility for his conduct, he, unlike Fitchett, has not yet expressed remorse.  For these reasons, the government is requesting a greater period of home detention for Sweet.

After a review of the applicable § 3553 factors, the government believes that a two-month period of home detention as a term of probation, plus the agreed-upon restitution, is appropriate.

---

[4]  This Court also sentenced an additional CVC codefendant, Michael Curzio, on July 12, 2021.  Curzio, who received the statutory maximum sentence of six months of incarceration for the same offense for which Fitchett has pleaded guilty, is not an apt case for comparison due to Curzio's significant criminal history and because he had been detained for nearly the entire six months.

## V.      <u>Conclusion</u>

Sentencing here requires that the Court carefully balance the various factors set forth in 18 U.S.C. § 3553(a).  As detailed above, some of those factors support a sentence of incarceration, but most of them support a more lenient sentence.  Balancing these factors, the government recommends that this Court sentence Fitchett to two months of home detention as a term of three years of probation, 60 hours of community service, and $500 in restitution in addition to the $10 mandatory special assessment.  Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on her liberty as a consequence of her behavior, while recognizing her limited criminal conduct on January 6 and her early acceptance of responsibility.  It also allows continued monitoring of Fitchett in the event of future participation in similar conduct.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY

By:      */s/ Seth Adam Meinero*
SETH ADAM MEINERO
Trial Attorney (Detailee)
United States Attorney's Office for the
  District of Columbia
D.C. Bar No. 976587
202-252-5847
Seth.Meinero@usdoj.gov

*/s/ Susan Lehr*
SUSAN LEHR
Assistant United States Attorney (Detailee)
United States Attorney's Office for the
  District of Columbia
Nebraska Bar No. 19248
402-661-3700
Susan.Lehr@usdoj.gov

16

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 1, 2021, I served a copy of the foregoing on all

parties to this matter as listed in the Court's Electronic Case Files system.

*/s/ Seth Adam Meinero*
SETH ADAM MEINERO
Trial Attorney (Detailee)

17